UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA MOORE,<br><br>                              Plaintiff,<br>v.<br><br>GREYHOUND BUS LINES, INC.,<br><br>                              Defendant. | Case No.: 15-cv-1186-CAB (MDD)<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 111]** |

This matter comes before the Court on Plaintiff Brenda Moore's Motion for Summary Judgment [Doc. No. 111]. The motion has been briefed and the Court held oral argument on March 19, 2019. For the reasons explained below, the Court denies the motion and dismisses this action as moot.

**I.    BACKGROUND**

Plaintiff filed her original *pro se* complaint in May 2015. Moore asserted claims against Defendants Greyhound Bus Lines, Inc. ("Greyhound") and U.S. Security Associates, Inc. ("U.S. Security"), for violation of the Rehabilitation Act, 29 U.S.C. § 794; violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; intentional infliction of emotional distress; negligent infliction of emotional distress; breach of contract; and "violation of the California Consumer Protection Act."

[Doc. No. 1.]

On November 25, 2015, Plaintiff filed the First Amended Complaint ("FAC") for violation of Title III of the ADA, 42 U.S.C. § 12181; violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*; violation of the California Consumer Legal Remedies Law Act; "deceptive advertisements unfair business practices;" and "negligent intentional infliction of emotion distress." [Doc. No. 34.] On April 22, 2016, this Court granted defendants' motions to dismiss, ordering that Plaintiff may file a motion, no later than May 23, 2016, with the Court requesting leave to file a second amended complaint. [Doc. No. 46.]

On May 19, 2016, Plaintiff filed her motion for leave to file a second amend complaint [Doc. No. 47] that was opposed by both defendants [Doc. Nos. 48, 49.] On August 24, 2016, this Court, finding that amending would be futile and prejudicial to defendants, denied Plaintiff's request for leave. [Doc. No. 50.] Plaintiff appealed this Court's decision to the Ninth Circuit. [Doc. No. 52.] The Court of Appeals held that Ms. Moore should be granted <u>leave to amend her ADA claim against only Greyhound</u>; the ADA claim against U.S. Security was properly dismissed; <u>and all other federal and state claims had been abandoned</u> because Ms. Moore "failed to raise any specific arguments regarding these claims in her opening brief." [Doc. No. 54 at 2-4, emphasis added.]

On December 4, 2017, Plaintiff filed a Second Amended Complaint ("SAC") which she signed under penalty of perjury. [Doc. No. 60.] The SAC asserts a claim for violation of Title III of the ADA, 42 U.S.C. §§ 12181-89, for discrimination Plaintiff allegedly encountered during a bus journey she made from Oceanside, California to Fort Riley, Kansas in December 2014. [Doc. No. 60.] It is generally alleged in the SAC that Plaintiff, an individual with a disability, was denied boarding and de-boarding assistance on more than one occasion while stopped at a Greyhound Bus Station in Denver, Colorado. [*Id.*] The refusal to aid Ms. Moore resulted in her being separated from her travelling companion, left her unable to board a subsequent bus, and culminated in her being "forced out of the bus station" into the cold in a snowstorm where she suffered a concussion and

frostbite. [*See generally,* Doc. No. 60.] The prayer for relief seeks an injunction, an award of compensatory damages, and the assessment of a civil penalty. [*Id.* at 15-16.]

On December 14, 2017, Defendant Greyhound filed a Motion to Strike Request for Monetary Damages as Set Forth in Second Amended Complaint and for a Mandatory Settlement Conference. [Doc. No. 61.] The Court granted the unopposed motion on the grounds that the compensatory damages and civil penalties requested by Plaintiff are unavailable to her as a private plaintiff under Title III of the ADA. [Doc. No. 68 at 3.] Ms. Moore's appeal of this ruling [Doc. Nos. 71, 74] was dismissed by the Court of Appeals for lack of jurisdiction. [Doc. No. 82.]

On June 5, 2018, Plaintiff submitted a filing that was construed by the Court as a request for reconsideration and a request for leave to amend. [Doc. No. 80.] On July 10, 2018, the Court denied Plaintiff's request to file a Third Amended Complaint to add a claim for violation of California Civil Code section 51(f) ("UNRUH") to the current action. [Doc. No. 93.] In response to the Court's order, Plaintiff filed an "Ex-Parte Application for Reconsideration of Interlocutory Order Pursuant to F.R.C.P. 54(b); Reconsider the Matter and Modify Amend, or Revoke the Prior Order F.R.C.P. 60(b)." [Doc. No. 94.] On August 14, 2018, this Court denied Plaintiff's request. [Doc. No. 103.] Ms. Moore's appeal of this ruling [Doc. No. 104] was dismissed by the Court of Appeals for lack of jurisdiction. [Doc. No.107.]

On December 4, 2018, Plaintiff filed a motion for summary judgment with a noticed hearing date of December 16, 2018. [Doc. No. 111 at 1-8.[1]] Along with her motion Plaintiff included: (1) a Declaration in Support of the Motion for Summary Judgment [Doc. No. 111 at 9-11]; (2) Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment Pursuant to Local Rule 56-1 [*id.* at 12-16]; Proposed Judgment Granting Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [*id.* at 17]; Proof of Service by Mail [*id.* at 18-19]; Exhibit A – Copy of Plaintiff's

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Motion Notice of Motion to Alter or Amend Judgment Order FRCP 59(E) Docket No (68) filed June 05, 2018 [*id.* at 21-22]; Exhibit B – Notice of Motion and Motion for Leave to File an Amended and Supplemental Pleading F.R.C.P. Rule (15)(A) [*id.* at 23-24]; Exhibit C – Proposed Order Granting Plaintiff Brenda Moore Motion for Leave to File an Amended and Supplemental Pleading [*id.* at 25-27]; Exhibit D – Memorandum of Points and Authorities – dated May 31, 2018 [*id.* at 28-39]; Exhibit E – Order on Motion to Strike Request for Monetary Damages [*id.* at 40-42]; Exhibit F – Notice and Order for Early Neutral Evaluation Conference [*id.* at 43]; Exhibit G – Order Regarding Early Settlement Conference [*id.* at 44]; Exhibit H – Defendant Greyhound's Notice of Motion and Motion to Strike Request for Monetary Damages as Set Forth in Second Amended Complaint and for a Mandatory Settlement Conference [*id.* at 45-59]; Exhibit I – Order Regarding Filing of Second Amended Complaint [*id.* at 60-63]; Exhibit J – Plaintiff's Reply to Defendant's Opposition to Plaintiff's Ex-Parte Application for Reconsideration of Interlocutory Order Pursuant to FRCP 54(B) Reconsider the Matter and Modify, Amend or Revoke the Prior Order FRCP 60(B) [*id.* at 64-90]; and Exhibit K – Certificate of Service [*id.* at 91-92].

Because the hearing date was incorrectly calculated, the Court issued a briefing schedule on December 6, 2018, setting Defendant's opposition due date as December 20, 2018, with Plaintiff having up to and including January 10, 2019 to file her reply. [Doc. No. 112.]

On December 20, 2018, Defendant filed its Response in Opposition [Doc. No. 113], along with: (1) Request for Judicial Notice [Doc. No. 114][2]; (2) Opposition to Statement

---

[2] Defendant Greyhound has requested the Court take judicial notice of the Consent Decree dated February 10, 2016, in the matter of *The United Stated of America v. Greyhound Lines, Inc.*, United States District Court for the District of Delaware, Civil Action No: 16-67-RGA. [Doc. Nos. 114, 114-1.] Greyhound moves for judicial notice under Federal Rule of Evidence 201(b) because the document is a true and correct copy of a public record and government document and its authenticity is not subject to reasonable dispute. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (a court may take judicial notice of court filings and other matters of public record). Plaintiff has not opposed the use of this document or challenged its authenticity. Accordingly, the Court takes judicial notice of the 2016 Consent Decree [Doc. No. 114-1].

of Uncontroverted Facts and Conclusion of Law in Support of Motion for Summary Judgment Pursuant to Local Rule 56-1[Doc. No. 115]; (3) Evidentiary Objections to Declaration in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Doc. No. 116]; and (4) Certificate of Service [Doc. No. 117].

On January 29, 2019, the Court, wishing to make a determination based on the merits, issued an order requesting additional briefing on the summary judgment order because Defendant Greyhound's opposition is silent regarding the admissibility of the evidence presented in Ms. Moore's verified second amended complaint. [Doc. No. 119.] On February 6, 2019, Greyhound filed its supplemental briefing with the Court. [Doc. No. 122.] As of the date of this order, Plaintiff has not filed any further briefing related to the summary judgment motion.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

In evaluating a motion for summary judgment, a court may only consider admissible evidence. *See Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). A party may not create a triable issue of fact merely by presenting argument in its legal memoranda. *See S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*,

690 F.2d 1235 (9th Cir. 1982); see also *Estrella v. Brandt*, 682 F.2d 814, 891-20 (9th Cir. 1982) ("Legal memorandum and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid summary judgment.").

However, if a *pro se* plaintiff has signed his pleadings and or motions under penalty of perjury a district court is required to treat them as evidence for the purpose of summary judgment. *See Lopez v. Country Ins. & Fin. Serv.,* 252 Fed. App'x 142, 144 n.2 (9th Cir. 2007); *Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir. 1985) (a verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify.") (citing *Runnels v. Rosendale*, 499 F.32d 733, 734 n.1 (9th Cir. 1974)). *See also Jones v. Blanas,* 393 F.3d 918, 923 (9th Cir. 2004) (a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing *pro se*] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."); *Schroeder v. McDonald,* 55 F.3d 454, 460 n.10 (9th Cir. 1995) (pleading counts as "verified" if the drafter states under penalty of perjury that the contents are true and correct.)

### III. DISCUSSION

The Court begins by noting that Plaintiff moves for summary judgment on both an ADA and UNRUH claim, but the only cause of action currently before the court is the Title III of the ADA claim pled in the SAC. Plaintiff's requests to add an UNRUH claim were denied by the Court, and Plaintiff's appeal of the denial was dismissed by the Ninth Circuit. *See* Doc. Nos. 93, 103, 107. Thus, despite Plaintiff's continued attempt to litigate an UNRUH claim, she may only seek summary judgment on her violation of Title III of the ADA claim.

**A) Plaintiff's Motion for Summary Judgment**

To establish a violation of Title III of the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the defendant is a private entity that owns,

6

15-cv-1186-CAB (MDD)

leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Notwithstanding Defendant's objections, when ruling on this motion the Court has considered the portions of the verified SAC which Ms. Moore has personal knowledge of and sets forth facts admissible in evidence. Even taking into account the SAC, Ms. Moore has failed to meet the evidentiary burden required of her when moving for summary judgment and demonstrated that there are no material facts in dispute. Ms. Moore has personal knowledge to claim that she is a qualified individual with a disability under the ADA, and despite Greyhound's half-hearted attempt to argue to the contrary, it is undisputed that Greyhound is a public accommodation within the meaning of 42 U.S.C § 12181. However, Ms. Moore has not provided any facts or necessary evidence to support the third element of her claim – that she was denied public accommodations by the defendant because of her disability. For example, Ms. Moore lacks the personal knowledge to assert that the supervisors and security guards, who are the individuals she alleges denied her public accommodations, were employees of Greyhound. [*See* Doc. No. 60 at 5.] Ms. Moore's assertion that these individuals are employees of Greyhound is a legal conclusion and there are no facts nor evidence in the record to support this. Similarly, Ms. Moore lacks personal knowledge to assert that anyone at the Colorado bus depot who purportedly refused her boarding assistance knew of her disability and denied her boarding assistance on that basis. [*See id.* at 5, 7, and 11.] Again, this is a legal conclusion, unsupported by either facts or evidence in the record.

Moreover, within the documents filed as part of the motion for summary judgment Plaintiff has not identified for the Court portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which [she] believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Plaintiff included with her motion a Statement of Uncontroverted Facts [Doc. No. 111 at 12-14] wherein she purportedly identifies 11 undisputed material facts and cites and

attaches as sources several her own pleadings, proposed orders, and the Court's earlier orders [Doc. No. 111 at 12-16, 21-92], but such documents are not evidence. *See, e.g., U.S. v. Zermeno,* 66 F.3d 1058, 1062, (9th Cir. 1995) (assertions made in pleadings are not considered evidence); *Singh v. I.N.S.¸* 213 F.3d 1050,1054 n.8 (9th Cir. 2000) ("statements in motions are not evidence and are therefore not entitled to evidentiary weight") (citing *Matter of Ramirez-Sanchez,* 17 I. & N. Dec. 503 (BIA 1980); *S. Pac. Co. v. Conway*, 115 F.2d 746, 750 (9th Cir. 1940) ("[T]he office of a pleading is to state ultimate facts and not evidence of such facts."). Finally, the affidavit offered by Plaintiff simply informs the dates on which defendant was served with copies of certain documents in this litigation [*see* Doc. No. 111 at 9-11], does not contain facts specific to the Title III claim and is, therefore, not relevant to adjudication of the summary judgment motion.

In short, all that is contained in the papers filed as a summary judgment motion are Plaintiff's conclusory, general statements with no supporting citations to evidence. *See Allen v. City of Santa Monica*, No. CV 11-10139-R (SH), 2013 WL 6731789 at *14 (C.D. Cal. Dec. 18, 2013) ("conclusory, general statements with no supporting citations to the evidence do not meet the initial burden on summary judgment."). And while the SAC is signed under penalty of perjury and therefore acts as an affidavit, Plaintiff has not identified what portions of it demonstrate that there are no genuine issues for trial and the facts contained within it do not support all of the necessary elements of the ADA claim. Because there is not sufficient evidence currently before the Court to ascertain that there are no genuine issues of material fact, Plaintiff's motion for summary judgment is **DENIED**.[3]

---

[3] Having determined that Plaintiff has not properly supported her motion with enough evidence to warrant granting summary judgment in her favor, the Court declines to address Defendant's alternate argument for denial of summary judgment. However, the Court notes that summary judgment should be denied "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986). Here, the docket is replete with entries demonstrating the issues the parties have had regarding discovery, at this point no written discovery has been exchanged and no depositions have been taken. *See* Doc. Nos. 86, 90, 95, 96, 97, 98, 99, 108, 121, 124, 130, 133, 135, 138, 139, 140, 141,1 42, 144, 145, 146. The parties' inability to communicate has resulted in the Court ordering Plaintiff to sit for her deposition by March 29, 2019 [Doc.

**B) Defendant's Request for Entry of Summary Judgment in Its Favor**

Within its papers Defendant Greyhound requests, the Court, pursuant to Federal Rule of Civil Procedure 56(f), enter summary judgment in its favor, on the grounds that the injunctive relief sought by Plaintiff is rendered moot by the explicit language of paragraph 7 of the Consent Decree it entered into with the Department of Justice in *The United Stated of America v. Greyhound Lines, Inc.* [Doc. Nos. 114-1.]

Rule 56(f) allows the Court to *sua sponte* grant summary judgment for a nonmovant, so long as "the losing party has reasonable notice that the sufficiency of his or her claim will be in issue." *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010). The Ninth Circuit's guidance on Rule 56's notice requirements states, "[b]efore *sua sponte* summary judgment against a party is proper, that party must be given reasonable notice that the sufficiency of his or her claim will be in issue: Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (internal quotation marks and citation omitted). Ms. Moore has been on notice that the sufficiency of her claim will be an issue [Doc. Nos. 113, 114, 114-1], the Court requested additional briefing on the summary judgment to which Greyhound submitted supplemental briefing [Doc. Nos. 119, 122], and held a hearing on the summary judgment motion, at which time Ms. Moore acknowledged the existing consent decree in the Delaware action, and did not dispute that she has a claim pending in accordance with that injunction. Accordingly, the Court concludes that Ms. Moore had sufficient notice that Greyhound would be challenging the sufficiency of her claim.

"The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998). The party asserting mootness bears the heavy burden of

---

No. 135] and affording Plaintiff the opportunity to notice and take a Federal Rule of Procedure 30(b)(6) deposition of Greyhound by April 1, 2019. [Doc. Nos. 139, 146.]

establishing that there is no effective relief that the court can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). "An action 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (2017) (quoting *Chafin v. Chafin,* 568 U.S. 165, 172)). "The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be any effective relief." *Bayer,* 861 F.3d at 862 (quoting *McCormack v. Herzog,* 788 F.3d 1017, 1024 (9th Cir. 2015)). The only remedy available under the ADA is injunctive relief and injunctive relief claims are moot "if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S.167, 189 (2000).

Here, the gravamen of Ms. Moore's complaint is that because of her disability she did not receive assistance from Greyhound employees boarding and deboarding a Greyhound bus, she did not receive help with her luggage, she was refused service, and was denied travel. [Doc. No. 60 at 5, 11.] Ms. Moore asserts that Greyhound failed to provide the full and equal enjoyment of its transportation services to passengers with disabilities by:

(1) failing to ensure that personnel are trained to proficiency in boarding assistance, and in how to sensitively, appropriately, respectfully, and courteously interact with passengers with disabilities [Doc. No. 60 at 6, 13-14];

(2) failing to make accessible the "kneeling features"/"functional lift" on the bus available to those, such as plaintiff, who need it when boarding and deboarding and includes an allegation that Greyhound personnel lacked the ability to operate this equipment [*id.* at 6, 10];

(3) failing to allow all disabled passengers, such as plaintiff, adequate boarding and deboarding time [*id.* at 6];

(4) failing to allow disabled passengers, such as plaintiff, to leave and return to the bus at rest stops the same way it allows other passengers [*id.* at 6, 14];

(5) failing to facilitate the availability of designated priority seating [*id.* at 7, 11];

(6) failing to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities such as plaintiff [*id.* at 7];

(7) requiring and/or requesting passengers with disabilities, such as plaintiff, to reschedule their travel at a time other than the time passenger requested [*id.*];

(8) failing to permit a travel companion to assist disabled passenger with boarding at intermediate or rest stops [*id.*];

(9) failing to provide disabled passengers, such as plaintiff, with assistance with their luggage [*id.* at 7-8];

(10) failing to provide disabled passengers, such as plaintiff, with assistance boarding and deboarding Greyhound buses [*id.* at 8]; and

(11) "failed to make reasonable modifications to its policies, practices, and procedures, including by failing to assist individuals with disabilities such as plaintiff when plaintiff bought the ticket." [*Id.* at 12-13].

The SAC's prayer for relief requests the Court enjoin Greyhound, its officers, agents and employees from "engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA. [Doc. No. 60 at 15.] Further, Plaintiff asks the Court to order Defendant to comply with the requirements of Title III and revise its policies, practices and its implementing regulations. [*Id.* at 15.]

The consent decree that Greyhound entered into with the Department of Justice obligates Greyhound:

(1) not discriminate against any individual on the basis of disability [Doc. No. 114-1 ¶ 3];

(2) not exclude persons with disabilities from participation in or deny them the benefits of its transportation services [*id.* at ¶ 4];

(3) make reasonable modifications to its policies, practices, and procedures to

provide transportation services to individuals with disabilities, including providing priority seating, boarding assistance, and baggage assistance [*id.* at ¶ 5];

(4) maintain in operative condition features, including lifts and other means of access, of the vehicle that are required to make the vehicles accessible to and usable by individuals with disabilities [*id.* at ¶ 6];

(5) ensure personnel are trained to proficiency as appropriate to their duties in, among things, proper operation and maintenance of accessibility features and equipment (including, but not limited to, lifts, securement devices, and the "kneeling: of buses that have such capacity), boarding assistance, securement of mobility aids, and sensitive and appropriate interaction with passengers with disabilities. 42 U.S.C. § 12184; 49 C.F.R. §§ 37.173, 37.209" [*id.* at ¶ 7];

(6) permit all passengers with disabilities to leave and return to the bus on the same basis as other passengers when Greyhound stops at intermediate or rest stops, with Greyhound ensuring that assistance is offered to passengers with disabilities as needed to enable such passengers to get on and off the bus at the rest stop [*id.* at ¶ 8];

(7) provide reservation services to passengers with disabilities equivalent to those provided to other passengers [*id.* at ¶ 9];

(8) assist individuals with the use of securement systems and lifts, where necessary or upon request – including at intermediate and rest stops [*id.* at ¶ 10];

(9) allow family members or travel companions to assist the disabled person with routine boarding if the disabled passenger requests or consents to such person's assistance [*id.* at ¶ 11];

(10) not require or request passengers with disabilities to reschedule their trips or travel at a time other than the time the passenger has requested in order to receive accessible transportation [*id.* at ¶ 12];

(11) require all employees and contractors who interact with the public to attend

training on the nondiscrimination mandate of Title III of the ADA for the term of the decree.[4] The curriculum for the ADA training, as well as the individual providing it, is subject to the approval of the United States [*id.* at ¶ 22]; and

(12) require all employees and contractors who may be involved in operating the accessibility features of Greyhound's buses, including lifts and the "kneeling" of buses, to attend training on these features for the term of the decree [*id.* at ¶ 23].

Upon careful examination of the alleged failures Plaintiff asserts she experienced in 2014 and the relief she seeks compared with the corrective behavior Greyhound obligated itself to undertake in 2016, the Court is unable to find any violation that is not covered by the consent decree and provides training to remedy all the behaviors Plaintiff complains of. As set forth above, the decree covers: providing boarding and deboarding assistance, including at intermediate and rest stops; giving luggage assistance and providing priority seating; allowing travel companions to render assistance; operating and maintenance of lifts and "kneeling" of buses; assisting passengers to use the lifts, if such assistance is required; providing reservation services; contains provisions regarding not rescheduling travel; and mandates that Greyhound personnel be given instruction on how to sensitively and appropriately interact with individuals with disabilities. At the hearing Greyhound represented to the Court it is compliant with the requirements of the consent decree - it has been three years since the decree was entered, Greyhound has been subject to regular compliance testing [see Doc. No. 114-1 at ¶ 25] and the United States is continuing to monitor Greyhound's adherence to the terms of the decree.

Thus, because of the training Greyhound employees have subsequently undergone as a result of the consent decree Greyhound entered into with the Department of Justice neither Ms. Moore, or any other passenger, is reasonably likely to be subjected to the conduct Ms. Moore complains of. *See Ruiz,* 160 F.3d at 549 (a claim for injunctive relief

---

[4] The decree is to remain in effect for three years from its Effective Date, unless otherwise extended by order of the Court. [Doc. No. 114-1 at ¶ 40.]. The consent decree was signed by United States District Judge Richard Andrews on February 10, 2016. [*Id.* at 24.]

becomes moot once subsequent events have made clear the conduct alleged as the basis for the requested relief "could not reasonably be expected to recur."). Ms. Moore's protestations at the hearing that Greyhound will ignore the obligations of the consent decree is not sufficient to demonstrate a reasonable likelihood of future non-compliance. *See Bayer*, 861 F.3d at 865 ("absent any indicia of concreteness, a [plaintiff's] declaration is insufficient to support a finding that an actual or imminent injury exists") (citing *Lujan v. Defenders of Wildlife,* 504, U.S. 555, 564 (1992)). *See also O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

In sum, Greyhound is already complying with the requirements of Title III and has revised its policies, practices and its implementing regulations. Therefore, the Court is left with the inescapable conclusion that the 2016 consent decree **MOOTS** Ms. Moore's prayer for relief. *See Taylor v Resolution Trust Corp.,* 56 F.3d 1497, 1502 (D. C. Cir. 1995) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin."). Accordingly, the Court grants Defendant Greyhound's request to *sua sponte* grant summary judgment in its favor.

//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment [Doc. No. 111] is **DENIED**. In addition, because the consent decree moots Ms. Moore's prayer for relief, summary judgment is **GRANTED IN FAVOR OF DEFENDANT**.[5] Accordingly, the Clerk of Court is instructed to enter **JUDGMENT** for Defendant and to **CLOSE** this case.

It is **SO ORDERED.**

Dated: March 20, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[5] All outstanding discovery issues are deemed **WITHDRAWN WITHOUT PREJUDICE**.